IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARLIN SOCORRO MOLINA NEGRON, JOSE PABLO BARLETTA SEGARRA AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; VANESSA SAXTON ARROYO ON HER OWN BEHALF AND IN THE INTEREST OF THE MINOR A.I.G.S.; PLAINTIFFS BRING THIS CLASS ACTION ON BEHALF OF THEMSELVES AND A CLASS OF PERSONS ("CLASS MEMBERS") WHO HAVE BEEN SUBJECT TO ILLEGAL AND WRONG ACTIONS BY DEFENDANTS. UNKNOWN PLAINTIFFS.<br><br>PLAINTIFFS<br><br>VS<br>FRONTIER AIRLINES INC.<br>4545 AIRPORT WAY, DENVER, CO 80239<br>UNKOWN DEFENDANTS, UNKNOWN INSURANCE AGENCIES.<br><br>DEFENDANTS | **CLASS ACTION**<br><br>CIVIL NO.<br><br>COMPLAINT FOR:<br>U.S. CONSTITUTIONAL AND CIVIL RIGHTS CLAIMS (DUE PROCESS, EQUAL PROTECTION, AND RIGHTS UNDER 42 U.S.C. § 1983 AND § 1981; THE AIR CARRIER ACCESS ACT, 49 U.S.C. § 41705; THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. § 12101 ET SEQ.; CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981; CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983; BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH; NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; FEDERAL RULE OF CIVIL PROCEDURE 23(B)(2) AND (B)(3); SUPLEMENTAL JURISDICTION.<br><br>(DEMAND FOR JURY TRIAL) |

**CLASS ACTION COMPLAINT**

NOW COMES THE PLAINTIFFS and prays as follow.

## I. INTRODUCTION

1. This is a class action against Defendant Frontier Airlines, Inc. ("Frontier" or "Defendant") for systematic discrimination, breach of contract, and violation of federal civil rights guaranteed by the U.S. Constitution and federal law. Frontier's conduct, including the arbitrary cancellation of flights, denial of boarding, hostile treatment, and failure to accommodate passengers with disabilities, constitutes a pattern of discrimination, unequal treatment, and denial of due process and equal protection under color of federal authority delegated to the airline industry.

2. This is a class action complaint against Defendant arising from Frontier's repeated and systemic

mistreatment of passengers, including cancellation of flights without adequate notice, discriminatory conduct by airline personnel, failure to provide reasonable accommodations for disabled passengers, and emotional distress inflicted by hostile and abusive treatment at airport gates and counters.

3. Plaintiff brings this action individually and on behalf of all similarly situated passengers who have suffered discrimination, breach of contract, emotional distress, and violations of their rights under the Air Carrier Access Act, 49 U.S.C. § 41705, and related federal and state laws.

4. Plaintiff brings this action under:

The Air Carrier Access Act, 49 U.S.C. § 41705;

The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.;

Civil Rights Act of 1866, 42 U.S.C. § 1981;

Civil Rights Act of 1871, 42 U.S.C. § 1983; and The U.S. Constitution, including the Fifth and Fourteenth Amendments (due process and equal protection). Plaintiff seeks compensatory, consequential, and punitive damages, and injunctive relief requiring Frontier to implement fair, non-discriminatory, and accessible practices for all passengers.

## II.   JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendants' state of citizenship.

6. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States.

7. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over related state-law claims.

8. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this district, and Plaintiffs dealt with Defendants, which are located in and/or do business in this district. Venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with

this District, and otherwise purposely avails themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District.

9. Plaintiffs also seek supplemental jurisdiction on state law claims under Article 1536 of the Commonwealth of Puerto Rico Civil Code, Puerto Rico Laws Annotated, Title 31, Section 10801.

### III.   PARTIES

10. Plaintiffs are residents of Puerto Rico and the United States of America.

11. Plaintiffs ARLIN SOCORRO MOLINA NEGRON, JOSE PABLO BARLETTA SEGARRA AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM ("Molina- Barletta") are residents and citizens of Puerto Rico. Plaintiffs are paying customers of Frontier Airlines and was traveling on domestic flights.

12. Plaintiffs VANESSA SAXTON ARROYO ON HER OWN BEHALF AND IN THE INTEREST OF THE MINOR A.I.G.S. ("Saxton-AIGS") are residents and citizens of Puerto Rico. Plaintiffs are paying customers of Frontier Airlines and was traveling on domestic flights.

13. Plaintiffs are all passengers of Frontier Airlines who, within the past ten years, experienced discrimination, denial of boarding, or unreasonable treatment arising from Frontier's failure to accommodate disabilities, unfair fees, or hostile conduct by staff.

14. The term 'Unknown Plaintiff' includes any person who may be affected by or involved in the allegations contained in this complaint.

15. Defendant Frontier Airlines, Inc. is a Colorado corporation with its principal place of business in 4545 AIRPORT WAY, DENVER, CO 80239. Frontier operates commercial airline services throughout the United States.

16. Unknown Defendants and Unknown Insurance Agencies are any persons that can be liable for the actions alleged in this Class Action Complaint.

### IV.   NATURE OF THE ACTION

17. Plaintiffs bring this class action on behalf of themselves and a class of persons ("Class Members"). Each Plaintiff brings this action individually and on behalf of all similarly situated passengers who have suffered discrimination, breach of contract, emotional distress, and violations of their rights under the Air Carrier Access Act, 49 U.S.C. § 41705, and related federal and state laws.

## V. FACTUAL ALLEGATIONS

18. On or about May 16, 2024, Plaintiff Molina arrived at the airport for a scheduled flight with Frontier Airlines. Frontier canceled the flight without adequate notice while Plaintiff Molina was in line at approximately 7:00 a.m.

19. Frontier rebooked Plaintiff Molina for a later flight, providing only a nominal voucher worth approximately 100 dollars.

20. On May 20, 2024, while attempting to board the rebooked flight, Plaintiff Molina encountered hostile and discriminatory treatment by two Frontier employees, including the gate manager.



21. Despite Plaintiff Molina's compliance with baggage requirements, the employees aggressively demanded an additional $99 fee for baggage that met the airline's size limits and treated Plaintiff in a hostile, humiliating, and intimidating manner.

22. When Plaintiff Molina, who suffers from a medical condition affecting her left knee and panic disorder, could not pay the fee, the gate manager intentionally closed the boarding gate in Plaintiff Molina's face well before the standard closing time, denying Plaintiff Molina boarding.

23. Plaintiff Molina suffered a panic attack as a result of Frontier's conduct, crying and screaming in distress. No Frontier employee provided medical assistance despite requests for help.

24. On the following day, May 21, 2024, Frontier again refused to honor Plaintiff Molina's prior payment, claiming she had lost her money because she did not make a claim within two hours—although no such policy was disclosed the day before.

25. Plaintiff Molina's son was forced to purchase new tickets with his personal credit card. Frontier also misrepresented seat assignments, failing to provide the accessible front seat previously purchased and required due to Plaintiff Molina's disability.

26. Frontier further delayed Plaintiff Molina's flight for more than three hours.

27. Plaintiff Molina felt humiliated, discriminated against, and emotionally traumatized by Frontier's employees' actions and demeanor.

28. These experiences reflect a broader pattern and practice by Frontier Airlines of failing to treat passengers with dignity, failing to accommodate disabilities, and systematically breaching its contractual and statutory duties.

29. On or about December 29, 2024, the Plaintiff, Vanessa Saxton Arroyo, purchased and paid in full for three (3) airline tickets—two (2) for adults and one (1) for a minor child (A.I.G.S.)—and traveled on Frontier Airlines Flight 2981 from San Juan, Puerto Rico, to Orlando, Florida, under confirmation number NB7FHF. On that flight, both Plaintiffs Saxton-AIGS, carried personal items without restriction or any additional charge by Frontier.

30. On January 5, 2025, Plaintiffs Saxton-AIGS had confirmed and paid for Frontier Airlines Flight 3509 from Orlando, Florida, to San Juan, Puerto Rico. Plaintiffs Saxton-AIGS timely completed the required check-in procedures for that return flight.

31. On that same date, January 5, 2025, the eve of Three Kings Day, as Plaintiffs Saxton-AIGS were preparing to board the aircraft, a Frontier gate agent (After listening to them speak in Spanish) informed them that one of their personal items—the same item previously accepted without issue on the flight from Puerto Rico to Orlando—allegedly exceeded the size limits, and that a fee would need to be paid for that item. No English-speaking passenger was detained despite having luggage of the same size.

32. Plaintiffs Saxton-AIGS explained to the Frontier employee that it was the same carry-on item she had previously brought on the same airline without any problem, and therefore she could not understand the sudden change in policy moments before boarding. The Frontier employee responded that "she was just following instructions." No English-speaking passenger was detained despite having luggage of the same size.

33. In light of the situation, and desperate to resolve the issue so Plaintiffs Saxton-AIGS could return to Puerto Rico for the Three Kings Day holiday, Plaintiffs Saxton-AIGS went to the Frontier counter adjacent to the boarding gate. There, she was attended by two Frontier employees—a male and a female—who, in a rude, dismissive, and curt manner, informed Plaintiffs Saxton-AIGS that they did not speak Spanish.

34. Plaintiffs Saxton-AIGS attempted to communicate with these employees in search of a solution that would allow Plaintiffs Saxton-AIGS, including her minor daughter, to board as scheduled and arrive in Puerto Rico for the holiday celebration, which holds significant cultural and family importance in Puerto Rico.

35. While at the Frontier counter near the gate, the male employee—whose name remains unknown because he refused to identify himself—behaved in a defiant, disrespectful, and intimidating manner. He insulted Plaintiffs Saxton-AIGS by calling them "stupid" and then denied the Plaintiffs Saxton-AIGS boarding, without offering them the opportunity to pay for the carry-on item or otherwise remedy the situation. From the outset, the intent of these two employees appeared to be to deny boarding to Plaintiffs Saxton-AIGS.

36. The discriminatory nature of this conduct is further evidenced by the fact that another passenger, in line immediately before Plaintiff and in an identical situation, was permitted to board without paying any additional fee, despite being told in front of Plaintiff that his bag also exceeded the permitted size. This demonstrates the Frontier employees' discriminatory intent to deny boarding to Plaintiffs Saxton-AIGS based on their national origin.

37. Distressed and stranded at the airport after being denied boarding, Plaintiffs Saxton-AIGS sought assistance at the Frontier counter inside the airport to find an alternate way to return home. Plaintiffs Saxton-AIGS unsuccessfully attempted to contact a supervisor and to communicate with Frontier through its online text/chat system, which repeatedly disconnected. After several attempts, Frontier offered Plaintiffs Saxton-AIGS a flight departing the following day, January 6, 2025, for a substantial additional cost. Despite the evident unequal and discriminatory treatment, no apology, meal, or lodging was offered by Frontier to Plaintiffs Saxton-AIGS, even though the missed

flight was solely attributable to Frontier's own actions.

38. The option offered by Frontier was not viable, as Plaintiffs Saxton-AIGS had no vehicle, no lodging for the night of January 5, 2025, and were caring for a minor child. After several additional attempts, Plaintiffs Saxton-AIGS again contacted Frontier via online chat and formally requested a refund for the flight from which Plaintiffs Saxton-AIGS had been unjustly and discriminatorily denied boarding.

39. Plaintiffs Saxton-AIGS notes that Frontier's communication system for resolving passenger disputes is effectively non-existent, designed in such a way that passengers are deprived of meaningful access to customer service or timely responses to their complaints.

40. Because Frontier arbitrarily, unjustifiably, and discriminatorily denied boarding to Plaintiffs Saxton-AIGS, they were forced to incur additional expenses to secure alternative transportation from Orlando, Florida, to Puerto Rico on January 5, 2025, to arrive as originally planned and celebrate Three Kings Day with her family.

41. The conduct of Frontier and its employees caused Plaintiff and her family significant emotional distress and humiliation. By treating Plaintiffs Saxton-AIGS differently under identical circumstances than another passenger, Frontier engaged in discrimination based on nationality or national origin, in violation of applicable laws protecting passengers and consumers from such unlawful conduct.

## VI. CLASS ALLEGATIONS

42. Plaintiffs bring this action on their own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

"All passengers of Frontier Airlines who, within the past ten years, experienced discrimination, denial of boarding, or unreasonable treatment arising from Frontier's failure to accommodate disabilities, unfair fees, or hostile conduct by staff."

43. The Class is so numerous that joinder of all members is impracticable. Frontier operates hundreds of flights daily across the United States, and numerous passengers have lodged similar complaints.

44. This action involves questions of law and fact common to Plaintiffs and all members of the

Class, which Common questions of law and fact include:

    a. Whether Frontier breached its contracts of carriage;

    b. Whether Frontier discriminated against disabled passengers in violation of the Air Carrier Access Act;

    c. Whether Frontier engaged in negligent or reckless conduct causing emotional distress; and

    d. The proper measure of damages and injunctive relief.

45. Plaintiffs and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.

46. Plaintiffs understand and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or that directly conflict with the interests of the other members of the Class.

47. Plaintiffs' claims are typical of those of the absent Class Members because Plaintiffs and the Class Members each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein.

48. This action is brought under Rule 23 because Defendants have acted on grounds generally applicable to all members of the Class.

49. Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations.

50. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VII.   CAUSES OF ACTION

**COUNT I – Breach of Contract**

51. Plaintiff incorporates all prior paragraphs.

52. Defendant breached its contract of carriage by canceling and delaying flights without adequate notice, denying boarding without cause, and failing to provide purchased or promised services.

53. As a result, Plaintiff and the Class sustained financial losses and emotional distress.

54. Plaintiffs buy tickets, a contract of carriage formed between the Plaintiffs and the Defendants.

55. Defendants have obligations, which are detailed in the contract of carriage. Defendants' obligations include: Transporting Plaintiffs to the destination safely and in a reasonable manner. Providing basic services promised in the ticket like seating, boarding, and assistance.

56. Defendants violate its obligation to transport Plaintiff safely and with reasonable care.

57. Defendants violate specific contractual promises as to assistance to all passengers and non-discrimination to Plaintiffs.

58. Defendants' conduct prevents Plaintiffs from receiving the agreed-upon service.

**COUNT II – Discrimination under the Air Carrier Access Act, 49 U.S.C. § 41705**

59. Defendants are subject to the Air Carrier Access Act, which prohibits discrimination on the basis of disability in air travel.

60. Defendants failed to provide reasonable accommodations to Plaintiff and others with disabilities and instead treated them with hostility and humiliation.

61. Plaintiff and the Class are entitled to injunctive and declaratory relief, damages, and attorneys' fees.

62. Defendants' behavior is discriminatory based on race, gender, nationality, religion, disability, and the Plaintiffs have a claim under anti-discrimination laws.

63. Defendants are subject to federal laws like Title II of the Civil Rights Act for discrimination in public accommodations and ADA regulations for disability discrimination.

**COUNT III – Negligence and Negligent Infliction of Emotional Distress**

64. Defendants owed passengers a duty of care to operate safely, treat passengers with respect, and avoid foreseeable harm. Defendants violate this duty.

65. Defendants breached that duty by harassing, humiliating, and denying assistance to Plaintiff and others similarly situated.

66. Defendants' conduct, refusing assistance, abusive treatment causing harm, causes physical and emotional injury, and a negligence claim proceed.

67. As a direct and proximate result, Plaintiff suffered severe emotional distress, panic attacks, and

other damages.

**COUNT IV – Intentional Infliction of Emotional Distress**

68. Defendant's conduct was extreme and outrageous, intentionally or recklessly causing severe emotional distress to Plaintiffs.

69. Defendant's agents acted with malice and hostility, deliberately provoking panic and humiliation to Plaintiffs.

**COUNT V U.S. Federal Consumer Protection / Airline Regulations**

70. Defendant's conduct violates U.S. Department of Transportation ("DOT") Regulations.

71. Defendant's conduct violates the DOT consumer protection rules.

72. Defendant's conduct violates Refunds and Cancellations policies. Plaintiffs must be refunded because Defendants cancel the flights and refuses Plaintiff to boarding.

73. Defendant's conduct violates DOT rules for delays.

74. Defendant's conduct violates Disclosure Requirements, as they not clearly disclose fees, policies, and terms of carriage.

75. Defendant's conduct violates Non-Discrimination Rules. Defendant's conduct discriminate against Plaintiffs based on race, color, national origin, religion, sex, disability, and age in violation of federal law.

76. Defendant's conduct violates the ticket binding contract. Defendant's conduct fails to honor the terms of the ticket binding contract, denying boarding, refusing assistance promised in contract constitute an unfair practice.

77. Defendant's conduct violates the Federal Statutes for Unfair or Deceptive Practices.

78. Defendant's conduct violates the Federal Trade Commission (FTC) – Unfair or Deceptive Acts

79. Defendant's conduct commits unfair and deceptive acts and practices.

80. Defendant's conduct commits misleading advertising, failing to disclose fees, false promises regarding service.

**COUNT V – Count Under Puerto Rico State Law**

81.  Also, Defendants come obliged under Puerto Rico Civil Code Section 31 L.P.R.A. § 10801 to pay for its gross negligence and recklessness in the mortgage handling and actions against the Plaintiffs in this case.

82.  In federal court, the substantive law is Puerto Rico law (per the *Erie* doctrine), but the Federal Rules of Civil Procedure govern the process.

83.  Tort liability in Puerto Rico arises primarily under Article 1802 of the Civil Code (now Art. 1536 in the 2020 Civil Code revision): "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage caused." *(31 L.P.R.A. § 5141; now 31 L.P.R.A. § 10801).*

84.  To recover under Art. 1536, the plaintiff must prove:

   1. An act or omission by the defendant;
   2. Negligence or fault;
   3. Actual damage (economic or moral harm); and
   4. A causal relationship between the act/omission and the damage.

   Colón v. Romero Barceló, 112 D.P.R. 573 (1982); Malavé-Félix v. Volvo Car Corp., 946 F.2d 967 (1st Cir. 1991) (applying Puerto Rico law in federal court).

85.  Defendants' actions have cause material, physical and mental damages to Plaintiffs.

86.  The foregoing facts show that the Plaintiffs suffered a pattern of racial discrimination by Frontier, whose negligent actions caused severe bodily harm and inability to work. Such conduct is prohibited under Puerto Rican law.

87.  Section 1 of Article II of the Constitution of Puerto Rico establishes that human dignity is inviolable, that all persons are equal before the law, and that no discrimination shall be established based on race, color, sex, birth, origin, social condition, or political or religious ideas.

88.  Section 8 of Article II of the Constitution of Puerto Rico protects all people against attacks on honor, reputation, and private or family life.

89.  Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination based on age; the

Equal Employment Opportunity Commission (EEOC) recognizes workplace harassment as a form of age discrimination, and both federal and local jurisprudence have sanctioned such discriminatory conduct.

90. These laws allow the Plaintiff to seek compensation for damages, including bodily injury, lost earnings, mental anguish, and material losses, resulting from the negligent acts and omissions of the defendant.

91. Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. sec. 10801, provides: *"A person who, by fault or negligence, causes damage to another is obliged to repair it."*

92. Article 1538, 31 L.P.R.A. sec. 10803, states:

*"Damages are compensated in money, through specific restitution, or a combination of the foregoing remedies, at the choice of the injured party, provided there is no double recovery. However, when the act or omission constitutes a crime, is intentional, or shows gross disregard for the life, safety, and property of others, the court may impose additional indemnity not exceeding the amount of the damage caused."*

93. Plaintiffs Molina-Barletta further allege that the Husband, as well as the marital community/conjugal partnership (community property), have sustained and continue to sustain economic, personal, and consequential damages as a direct and proximate result of Defendants' wrongful conduct. The harm includes, without limitation, loss of funds, loss of value to the community property, loss of expected benefits, emotional distress, and other legally cognizable damages. Defendants' wrongful acts and omissions have therefore injured not only the individual spouse, but the marital economic unit as recognized under Puerto Rico law.

### VIII. PRAYER FOR RELIEF

94. The Plaintiffs state that the damages suffered were product of a faulty and / or negligent handling of Plaintiffs' passengers' rights by the Defendants, their representatives and authorized officials.

95. Defendants' actions have cause great suffering and emotional distress to Plaintiffs.

96. The Plaintiffs had mental anguishes and sufferings as a result of the wrong proceedings brought against them.

97. All these negligent acts have destroyed the spirit and strength of the Plaintiffs. They have caused moral damages; anguish and mental suffering that must be compensated by this Honorable Court.

98.     For all the above-mentioned facts, we understand that under Puerto Rico Civil Code in force the claimant debt to pay for its gross negligence and recklessness in the handling and actions of the Defendants in this case.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated pray for judgment against Defendant as follows:

A. An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class Members;

B. Restitution to Plaintiffs and Class Members;

C. Actual damages for injuries suffered by Plaintiffs and Class Members;

D. An order declaring the alleged acts and practices of Defendants to constitute a breach of contract and a breach of the covenant of good faith and fair dealing;

E. An order for Defendants' specific performance of its contractual obligations together with other relief required by contract and law;

F. Reasonable attorneys' fees and the costs of this action;

G. Statutory pre-judgment interest;

H. Award Plaintiff damages against all Defendants, jointly and severally, in an amount no less than $15,000,000.00 to be proven at trial together with prejudgment interests, costs and attorney fees.

I. Such other relief as this Court may deem just and proper.

## IX.   DEMAND FOR JURY TRIAL

99.     Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

**RESPECTFULLY SUMBITTED** this 5 of November, 2025.

*S/Pedro Tomás Berríos Lara* USDCPR 217611
420 Ponce de León Ave. Midtown Bld. Suite 607
San Juan, Puerto Rico 00919
(787)556-0440; pberrioslara@gmail.com

*S/Joseph F. Gierbolini,* USDCPR 229014
PO Box 191620 San Juan, PR 00919-1620
787-225-5367, juriszone@capr.org