**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MOLINA-NEGRÓN, et al.,<br>Plaintiffs,<br>v.<br>FRONTIER AIRLINES, INC., et al.,<br>Defendants. | CASE NO.: 3:25-cv-01592-RAM |

**MOTION TO DISMISS THE COMPLAINT FOR**
**FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**TO THE HONORABLE COURT:**

Frontier Airlines, Inc. ("Frontier"), appearing through counsel, without waiving any defense, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), respectfully moves this Honorable Court to dismiss the Complaint for failure to state a claim upon which relief can be granted, and in support thereof states as follows:

## I. INTRODUCTION

On November 5, 2025, Plaintiffs filed a purported "Class Action Complaint" (the "Complaint") against Frontier and other unknown defendants, seeking to recover damages and financial losses allegedly arising from an asserted breach of Frontier's contract of carriage, alleged mistreatment of passengers, purported discriminatory conduct based on disability and language of the passengers, enforcement of baggage requirements or size-limits, and alleged violations of constitutional provisions and federal civil rights statutes. See, Complaint, ¶¶ 1, 2, 21, 42 and 52.

Frontier respectfully moves for the dismissal of all the claims asserted in the Complaint because Plaintiffs have attempted to invoke constitutional provisions, federal statutes, and state laws that either do not apply to private air carriers, do not provide a private right of action, or are

expressly preempted by federal law. Specifically, Plaintiffs' disability-based discrimination allegations under the Air Carrier Access Act, 49 U.S.C. § 41705, and the Americans with Disabilities Act must be dismissed because: (1) the Air Carrier Access Act does not provide a private right of action for damages against air carriers, and (2) the Americans with Disabilities Act does not apply to air carriers in the context of air transportation. Likewise, Plaintiffs' state-law claims are expressly preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), because they relate directly to airline services, including boarding decisions, baggage policies, flight delays, ticketing practices, and customer service interactions.

Accordingly, even accepting Plaintiffs' factual allegations as true for purposes of this Motion to Dismiss, the Complaint fails to state any plausible claim for relief and must be dismissed pursuant to Rule 12(b)(6).

## II. STANDARD OF REVIEW APPLICABLE TO MOTIONS TO DISMISS UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Complaint filed by Plaintiffs fails to contain the specific and plausible factual allegations necessary to satisfy the pleading requirements under Fed. R. Civ. P. 8(a)(2), as interpreted by the Supreme Court of the United States in Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Fed. R. Civ. P. 8(b). Although Plaintiffs' Complaint spans thirteen (13) pages, it relies largely on conclusory allegations, legal labels, and sweeping assertions of discrimination and misconduct, without pleading facts sufficient to establish entitlement to relief under any cognizable legal theory.

The standard governing Rule 12(b)(6) motions is well settled. The well-pleaded facts of the complaint are assumed to be true, and the court must determine whether under the facts therein alleged the plaintiff would be entitled to any recovery or remedy. Negrón v. Hernández, 35 F.3d

25 (1st Cir. 1994); Márquez-Ramos v. Commonwealth, 2012 WL 1414302 (D.P.R., April 2, 2012)(not reported). A motion to dismiss pursuant to Rule 12(b)(6) simply put, challenges the legal sufficiency of the complaint.

In Twombly and Iqbal, the Supreme Court of the United States heightened the pleading standard under Fed.R.Civ.P. 8(a)(2) and made it clear that only a plausible claim for relief survives a motion to dismiss. Iqbal, 556 U.S. at 679. The Supreme Court also held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545; Iqbal, 556 U.S. at 678.

After Iqbal courts must conduct a two-step analysis when presented with a motion to dismiss for failure to state a claim. See, Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012); Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 7, 11–13 (1st Cir. 2011). *First*, courts must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55. *Second*, courts must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 663).

When ruling on a Rule 12(b)(6) motion, the Court may consider not only the complaint but also matters incorporated by reference, matters of public record, and matters subject to judicial notice, without converting the motion to dismiss into a motion for summary judgment. In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). The First Circuit Court has

specifically noted that "a court may look to matters of public record in deciding a Rule (12)(b)(6) motion without converting the motion into one for summary judgment" and they may also consider documents incorporated into the pleadings. Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir 1993).

Likewise, Fed.R.Civ.P. 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "fair notice of what the claim is and the ground upon which it rests." Twombly, 550 U.S. at 555. To meet this requirement, the complaint must be supported by factual allegations. Iqbal, 556 U.S. at 678.

Pursuant to the applicable case law, Frontier seeks the dismissal of the above captioned class action for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).[1]

## III. LEGAL ARGUMENTS AND DISCUSSION

As established in Twombly and Iqbal, Plaintiffs must plead facts sufficient to state a plausible claim for relief under each statute they invoke, in order to comply with the heightened pleading standard under Fed.R.Civ.P. 8(a)(2).

In this case, Plaintiffs asserted claims under (a) the Air Carrier Access Act, 49 U.S.C. § 41705; (b) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.; (c) the Civil Rights Act of 1866, 42 U.S.C. § 1981; (d) the Civil Rights Act of 1871, 42 U.S.C. § 1983; and (e) the Fifth and Fourteenth Amendments to the United States Constitution. See, Complaint ¶ 4. As a matter of law, none of these authorities cited by Plaintiffs support their claims against Frontier under the

[1] Frontier admits all of the well-plead allegations contained in the Complaint solely for purposes of this Motion to Dismiss. Frontier reserves the right to object and/or deny the allegations therein asserted.

facts alleged, and each fails independently for reasons that compel dismissal, as will be explained below.

**A. Dismissal of the Claims under the *Air Carrier Access Act***

In Count II of the Complaint, Plaintiffs claim that they have a cause of action against Frontier under the Air Carrier Access Act for the alleged discrimination against passengers with a disability. See, Complaint ¶¶ 4, 59-62. As per the Complaint, the alleged "disability" affecting one of the plaintiffs (Plaintiff Molina) was "a medical condition affecting her left knee and panic disorder". Complaint ¶ 22. These claims fail as a matter of law and must be dismissed.

**1. No Private Right of Action under the Air Carrier Access Act**

The Air Carrier Access Act, 49 U.S.C. § 41705 (the "ACAA") was enacted by Congress in the year 1986, to guarantee that people with disabilities, as defined therein, would receive consistent and nondiscriminatory treatment when traveling by air. See, Pub. L. No. 99-435, 100 Stat. 1080. The ACAA is implemented through regulations promulgated by the U.S. Department of Transportation ("DOT"), codified at 14 C.F.R. Part 382, and enforced through an administrative scheme administered by DOT.

Federal courts have consistently held that there is no private right of action for damages under the ACAA against airline carriers. Specifically, relying on the U.S. Supreme Court ruling in Alexander v. Sandoval, 532 U.S. 275 (2001)[2], the Second, Fifth, Tenth, and Eleventh Circuits have all held that the ACAA "is enforceable only by the agency charged with administering it" (*i.e.*, the DOT), and that **no private right of action exists against air carriers to enforce the ACAA.** López v. Jet Blue Airways, 662 F.3d 593, 597–98 (2d Cir. 2011); Stokes v. Southwest Airlines,

[2] In this case, the Supreme Court held that federal courts may not find an implied private right of action unless a statute gives *explicit* indication that Congress intended to grant such a right.

887 F.3d 199 (5th Cir. 2018) (private persons cannot sue in federal district court to enforce the ACAA); Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1269–70 (10th Cir. 2004); Love v. Delta Air Lines, 310 F.3d 1347, 1351–52 & n.2 (11th Cir. 2002). The ACAA prohibits airlines from discriminating on the basis of a disability, as defined in said law, but it "does not expressly provide a right to sue the air carrier." López, 662 F.3d at 597. The ACAA establishes certain administrative remedies but not a private right of action. Boswell, 361 F.3d at 1265.

In this case, Plaintiffs' claims for damages, punitive relief, and attorneys' fees under the ACAA must be dismissed. Complaint, ¶¶ 59-63. Although the ACAA prohibits air carriers from discriminating against disabled individuals who have a "physical or mental impairment that substantially limits one or more major life activities," the ACAA does not create a private right of action in federal district court. Moreover, Plaintiffs' conclusory reference in the Complaint to a knee condition and panic disorder of a passenger does not plausibly allege a "disability" within the meaning of the ACAA or its implementing regulations, as will be explained below, nor does it allege that Frontier denied boarding or services because of any such condition or alleged disability.

### 2. Failure to State a Claim under the Air Carrier Access Act

The ACAA prohibits discrimination against an "otherwise qualified individual with a disability." 49 U.S.C. § 41705(a). The ACAA is implemented through regulations promulgated by the DOT, codified at 14 C.F.R. Part 382, which govern the scope and application of the ACAA.

Under DOT regulations, an "individual with a disability" is defined as a person "who has a physical or mental impairment that, on a permanent or temporary basis, **substantially limits** one or more major life activities". 14 C.F.R. § 382.3 (emphasis added). This definition requires more than the mere existence of a medical condition; the impairment must impose a substantial limitation.

In this case, Plaintiffs allege only that Plaintiff Molina suffers from "a medical condition affecting her left knee" and "panic disorder." See, Complaint ¶ 22. These conclusory references are insufficient to plausibly allege a qualifying disability under the ACAA. Plaintiffs do not allege that the knee condition substantially limited walking, standing, or boarding an aircraft, nor do they allege the use of a wheelchair, mobility device, or other assistance commonly associated with mobility impairments. Similarly, allegations of anxiety or panic disorder, without factual allegations that the condition substantially limits a major life activity in the context of air travel, do not satisfy the regulatory definition.

Moreover, DOT regulations contemplate that disability-related accommodations arise when a passenger provides notice of a disability and requests assistance. See, e.g., 14 C.F.R. §§ 382.11, 382.95. The Complaint contains no allegation that Plaintiffs requested preboarding, mobility assistance, seating accommodation, or any other disability-related service. Absent such allegations, Plaintiffs fail to plausibly state a claim under the ACAA.

Finally, the ACAA prohibits discrimination "on the basis of" disability. 49 U.S.C. § 41705(a). Plaintiffs do not allege facts showing that Frontier denied boarding or services because of any disability. Instead, the Complaint attributes the challenged conduct to baggage fee enforcement and boarding procedures—matters unrelated to disability status. Because Plaintiffs fail to plausibly allege causation, their ACAA claim fails as a matter of law.

### B. Dismissal of the Claims under DOT Regulations

In Count V of the Complaint, Plaintiffs allege that Frontier violated various DOT regulations, including refund policies, delay rules, disclosure requirements, and "consumer protection rules." See, Complaint ¶¶ 70–80. These allegations do not state a cognizable cause of action and must be dismissed as a matter of law.

### 1. DOT Regulations Do Not Create a Private Right of Action

It is well established that federal regulations do not create private rights of action unless Congress has expressly authorized such enforcement. See, Alexander v. Sandoval, 532 U.S. at 286–87 ("Private rights of action to enforce federal law must be created by Congress."). The Supreme Court of the United States has made clear that the existence of a regulatory scheme does not itself create a private right to sue absent clear statutory intent. Id., at 291 ("Regulations alone cannot create private rights of action; the source of the right must be a statute.")

The statutory provisions governing airline consumer protection and disability regulation — including 49 U.S.C. §§ 41705 and 41712 (prohibiting unfair or deceptive practices in air transportation) — establish an administrative enforcement framework administered exclusively by the DOT. See, 49 U.S.C. § 46101(a) (authorizing administrative complaints to DOT); § 46106 (enforcement authority by the DOT). Nothing in these statutes provides a private right of action in federal district court; and federal courts have consistently held that airline-related regulatory schemes enforced by the DOT do not create privately enforceable causes of action. See, e.g., Love v. Delta Air Lines, supra; Boswell v. SkyWest Airlines, Inc., supra; and Stokes v. Southwest Airlines, supra. That is why "consumer protection provisions … do not permit the imputation of a private right of action against an airline". See, Buck v. American Airlines, Inc., 476 F.3d 29 (1st Cir. 2007).

Accordingly, Plaintiffs cannot privately enforce alleged violations of DOT refund rules, delay policies, disclosure regulations, or consumer protection guidelines through a damages action in federal court, and Count V of their Complaint must be dismissed. Likewise, to the extent Plaintiffs attempt to characterize alleged regulatory violations as independent federal claims, such claims are legally defective and must be dismissed under Rule 12(b)(6).

### C. Dismissal of the Claims under the *Americans with Disabilities Act*

In the Complaint, Plaintiffs assert claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. See, Complaint ¶¶ 4 and 62–63. These claims fail as a matter of law because the ADA does not apply to air carriers in the context of air transportation.

#### 1. The ADA Does Not Apply to Air Carriers in the Context of Air Transportation

Title III of the ADA prohibits discrimination on the basis of disability in places of "public accommodation." 42 U.S.C. § 12182(a). The ADA defines "public accommodation" through twelve enumerated categories, that include hotels, restaurants, recreation facilities, stores, private educational facilities, a terminal, depot, or other station used for specified **public transportation**, and various service establishments. 42 U.S.C. § 12181(7). The term "specified public transportation" means transportation by bus, rail, or any other conveyance **(other than by aircraft)**. 42 U.S.C. § 12181(10) (emphasis added). The ADA does not apply to air carriers in the context of air transportation. By expressly excluding aircraft from the definition of covered transportation, Congress made it clear that Title III does not apply to air carriers. Id.

Courts have consistently recognized that disability discrimination claims involving air travel are governed not by the ADA, but by the ACAA. See, e.g., Love v. Delta Air Lines, 310 F.3d 1347, 1355–56 (11th Cir. 2002); Stokes v. Southwest Airlines, 887 F.3d 199, 203 (5th Cir. 2018). The ADA expressly excludes aircraft from its coverage. Accordingly, Plaintiffs' claims under the ADA fail as a matter of law and must be dismissed with prejudice.

### D. Plaintiffs Fail to State a Claim under 42 U.S.C. § 1983

In their Complaint, Plaintiffs assert due process and equal protection claims under the U.S. Constitution and 42 U.S.C. § 1983. See, Complaint ¶¶ 4, 62 and 63. These claims fail because Frontier is a private entity, not a state actor.

### 1. Section 1983 Does not Apply to Private Parties Like Frontier

Section 1983 (42 U.S.C. § 1983) "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State'". 42 U.S.C. § 1983; Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). Specifically, Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

Id.

As the Supreme Court of the United States has made clear, Section 1983 "'is not itself a source of substantive rights,' but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989).

To state a claim under Section 1983, a plaintiff must plausibly allege: (1) that the conduct of a "person", (2) acting under color of state law, (3) deprived him of a federal constitutional or statutory right. Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4–5 (1st Cir. 2005); Lugar, 457 U.S. at 937. "If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." Estades-Negroni, 412 F.3d at 5.

A person acts under color of state law only when his or her conduct is "fairly attributable to the State." Id.; Lugar, 457 U.S. at 937. The First Circuit has emphasized that "[o]nly in rare circumstances" can private parties be treated or viewed as state actors. Estades-Negroni, 412 F.3d at 5.

To determine if a private party can be fairly characterized as a state actor, the following three (3) tests are applied: (1) the State Compulsion Test, (2) the Nexus/Joint Action Test, and (3) the Public Function Test. Id. Under "the compulsion test, a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the challenged conduct must in law be deemed to be that of the State." Id. Under the nexus/joint action test "a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Id. (citing Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir.1999). Under the public function test, "a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Estades-Negroni, 412 F.3d at 5.

This means that private parties may be deemed state actors only in limited circumstances, such as when:

(1) the private entity performs a function traditionally and exclusively reserved to the State;

(2) the State compels or significantly encourages the conduct; or

(3) there is joint participation/venture or conspiracy with state officials.

See, Rendell-Baker v. Kohn, 457 U.S. 830, 838–42 (1982); Blum v. Yaretsky, 457 U.S. 991, 1004–05 (1982); Tower v. Glover, 467 U.S. 914, 920 (1984); Estades-Negroni, 412 F.3d at 5.

In this case, the Complaint filed by Plaintiffs contains no factual allegations that Frontier acted jointly with any governmental entity, was compelled by the state, or performed a function traditionally exclusive to the state. Frontier is a private commercial airline engaged in the provision of air transportation services. The enforcement of baggage policies, boarding procedures, and ticketing requirements does not constitute state action under any of the tests recognized by the first Circuit. Plaintiffs have simply failed to allege sufficient facts to establish Frontier is a state actor and, thus, subject to suit under § 1983. The factual allegations of the Complaint fail to justify the finding of state action under the state compulsion test, the nexus/joint action test, or the public function test.

Because Plaintiffs fail to plausibly allege that Frontier acted under color of state law, their claims under § 1983 and the Fifth and Fourteenth Amendments fail as a matter of law and must be dismissed.

### E. Plaintiffs Fail to State a Claim under 42 U.S.C. § 1981

In their Complaint, Plaintiffs alleged claims for discrimination under 42 U.S.C. § 1981. See, Complaint ¶¶ 4, 62 and 63. Specifically, they claim that Frontier employees discriminated against Plaintiffs Saxton-AIGS when they were told that their personal item exceeded the size limits, as they were allegedly targeted because of their language or because they spoke in Spanish. Id. ¶¶ 31, 32. Plaintiffs further allege that they attempted to find a solution in the Frontier counter adjacent to the boarding gate, but Frontier employees said they did not speak Spanish, called one of the Plaintiffs "stupid," and denied boarding. Id. ¶¶ 33-35. Plaintiffs contend that they were denied boarding based on their national origin. Id. ¶ 36.

Section 1981 prohibits discrimination based on race. Notwithstanding, the language spoken by a person or their national origin is not related to race for purposes of Section 1981. Allegations relating only to Spanish language use or nationality, without factual allegations of race-based animus, are insufficient to state a claim under § 1981. Moreover, the conclusory assertions of discrimination in the Complaint fail under Twombly and Iqbal.

### 1. Plaintiffs Fail to Establish a Claim for Race Discrimination under 42 U.S.C. § 1981

Title 42 U. S. C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Id.

"Although § 1981 does not itself use the word 'race,'" the Supreme Court of the United States has "construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987). The Supreme Court has made it clear that Section 1981 "can be violated only by purposeful discrimination" or intentional discrimination. General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982). Under Section 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." St. Francis Coll., 481 U.S. at 613. Although Section 1981 extends to discrimination based on ancestry or ethnic characteristics, **it does not encompass discrimination based solely on national origin, place of birth or language preference**. Id. (a claim for discrimination under Section 1981 cannot rely solely on the place or nation of a person's origin or

religion). A claim under Section 1981 therefore cannot rely exclusively on allegations concerning nationality or the language a plaintiff speaks.

To state a claim under 42 U.S.C. § 1981, a plaintiff must plausibly allege that the defendant intentionally discriminated on the basis of race in the making or enforcement of a contract, and that such discrimination was the but-for cause of the plaintiff's injury — meaning the injury would not have occurred but for the plaintiff's race. Comcast Corp. v. National Association, 589 U.S. 327, 140 S. Ct. 1009 (2020) (holding § 1981 race-discrimination claims require a but-for causation standard applicable to the pleading stage); Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002). In the First Circuit, a § 1981 claim requires that the plaintiff allege racial discrimination "because of" race (race-based animus) in a contractual context, identifying the allegedly impaired contractual relationship under which the plaintiff has rights. Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013).

In this case, Plaintiffs allege that Frontier employees heard them speak Spanish and treated them differently because of their national origin. The Complaint contains no factual allegations suggesting racial animus, race-based comments, or discriminatory intent based on race or ethnic ancestry. Allegations relating to language use or nationality, without more, do not state a claim under § 1981. Even assuming arguendo that Plaintiffs' airline tickets and the resulting Contract of Carriage constitute a "contract" within the meaning of Section 1981, the Complaint still fails to plausibly allege that Frontier interfered with that contract because of race, or that race was the but-for cause of the alleged denial of boarding. See, Comcast Corp., 589 U.S. at 333, 140 S. Ct. at 1014–15.

Accordingly, Plaintiffs' § 1981 claims must be dismissed.

### F. Plaintiffs' State-Law Claims are Expressly Preempted by the Airline Deregulation Act

In Counts III, IV and VI of the Complaint, Plaintiffs assert claims for Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and state law tort provisions. See, Complaint ¶¶ 64–69 and 81-93. These causes of action are expressly preempted by the Airline Deregulation Act and must be dismissed.

#### 1. Preemption under the Airline Deregulation Act

In 1978, Congress enacted the Airline Deregulation Act, 49 U.S.C. § 40101 *et. seq.*, to promote "an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services." See, Statement of Purpose of the Act, Pub. L. No. 95-504, 92 Stat. 1705 (1978); 49 U.S.C. § 40101(a)(6).[3] As part of this deregulation, Congress removed governmental control over airline pricing, routes, and services, and expressly prohibited state interference in those areas.

To ensure that states would not undo federal deregulation by enacting regulations of their own—the Airline Deregulation Act expressly included a preemption provision, prohibiting states from enforcing any law "relating to rates, routes, or services" of any airline. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). The preemption provision of the Airline Deregulation Act reads, in its relevant part, as follows:

> "a State… may not enact or enforce a law, regulation, or other provision having the force and effect of law **related to** a price, route or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1)(emphasis added).

[3] Before 1978, the Federal Aviation Act of 1958 (FAA) authorized the federal government to closely regulate air carriers.

In Morales, the Supreme Court of the United States defined the "relating to" language to mean "having a connection with, or reference to, airline 'rates, routes, or services'". Morales, 504 U.S. at 384. The Supreme Court also held that the phrase "relating to" is key in determining the breadth of the ADA's preemption provision, concluding that the "words … express a broad pre-emptive purpose." Id. at 383. As such, the preemption clause in the Airline Deregulation Act prohibits a state from enacting or enforcing a law, regulation, or other provision having "a connection with or reference to airline rates, routes, or services." Id. at 384; 49 U.S.C. § 41713(b). Airline Deregulation Act's preemption provision has been interpreted broadly, displacing all state laws within its sphere. Morales, 504 U.S. at 384; Northwest, Inc. v. Ginsberg, 572 U.S. 273, 281-84 (2014).

The First Circuit applies a two-part test to determine whether a claim is preempted under the Airline Deregulation Act. See, Brown v. United Airlines, Inc., 720 F.3d 60 (1st Cir. 2013). Under this two-pronged test, the Airline Deregulation Act preempts a plaintiffs' state law claims if:

> (1) the "claim is based on a state 'law, regulation, or other provision having the force and effect of law'", and
>
> (2) the claim "is sufficiently 'related to a price, route, or service of an air carrier'".

Id.

The relevant inquiry is whether a particular claim will have an effect on certain aspects of an airline's business or core activities, namely its pricing, routes, and services. Id.; Morales, 504 U.S. at 379; American Airlines, Inc. v. Wolens, 513 U.S. 219, 227-28 (1995); Duncan v. Northwest Airlines, Inc., 208 F.3d 1112, 1114 n. 8 (9th Cir.2000). Under the Airline Deregulation Act, the focus should be on the effect that the state law has on airline operations. Buck v. American

Airlines, Inc., supra. That is why tort claims are considered preempted under the Airline Deregulation Act. Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc., 284 F. Supp. 2d 284, 287 (D. Md. 2003).

Courts have consistently recognized that airline boarding decisions, baggage policies, ticketing practices, customer service interactions, and flight delays constitute "services" within the meaning of the Airline Deregulation Act. See, Brown, 720 F.3d at 68–70; Wolens, 513 U.S. at 226–28; DiFiore v. American Airlines, Inc., 646 F.3d 81 (1st Cir. 2011) (claims related to baggage fee practices are preempted because they relate to airline pricing and services).

In this case, Plaintiffs' negligence, emotional distress, and related state-law claims arise directly from Frontier's enforcement of baggage requirements, boarding determinations, ticketing practices, and flight operations. These claims seek to impose state-law standards governing core airline services. Allowing such claims to proceed would subject air carriers to varying state standards governing core airline services, precisely the result Congress sought to prevent with the Airline Deregulation Act.

Accordingly, Plaintiffs' state-law claims are expressly preempted by the Airline Deregulation Act and must be dismissed pursuant to Rule 12(b)(6).

### G. Plaintiffs Fail to State a Claim for Breach of the Contract of Carriage

In Count I of the Complaint, Plaintiffs assert a breach-of-contract claim based on Frontier's alleged cancellation of flights, enforcement of baggage policies, denial of boarding, seat reassignment, delays, and failure to provide lodging or meals. See, Complaint ¶¶ 18–26, 31–39, 51–58. Plaintiffs further allege that Frontier failed to transport them safely and with reasonable care. Id., ¶ 56.

In their Complaint, Plaintiffs fail to identify the specific provisions of Frontier's Contract of Carriage allegedly breached. General dissatisfaction with airline services does not state a plausible contract claim. Therefore, dismissal of Count I of the Complaint is warranted for failing to meet the pleading standard of Twombly and Iqbal.

**1. Plaintiffs Fail to Identify a Specific Contractual Provision Allegedly Breached under the Contract of Carriage**

To state a claim for breach of contract, a plaintiff must plausibly allege: (1) the existence of a contract; (2) the obligations imposed on each of the parties under the contract, and that a breach occurred; and (3) the resulting damages. See, Buck v. American Airlines, Inc., supra, at 34.

In their Complaint, Plaintiffs do not identify a single provision from Frontier's Contract of Carriage that was allegedly breached. Instead, the Complaint relies on generalized assertions that Frontier "breached its contract of carriage" by canceling flights, enforcing baggage rules, denying boarding, and delaying travel.

Under Twombly and Iqbal, conclusory allegations that a defendant breached a contract, without reference to specific contractual language are insufficient to state a claim. Plaintiffs' failure to identify any contractual provision allegedly breached warrants the dismissal of Count I.

**1. Flight Schedules and Cancellations, Seat Assignments and Personal Item Size Limits**

This Honorable Court may take into consideration Frontier's Contract of Carriage, which Plaintiffs reference in their Complaint and governs their tickets, without converting this motion into one for summary judgment. See, Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993) (court may consider documents incorporated by reference in the complaint). Frontier's Contract of Carriage is attached hereto as **Exhibit 1**.

Frontier's Contract of Carriage expressly provides as follows:

- Section "**17 – Failure to Operate on Schedule…**

  A. Liability Limited - … **published schedules, flight times**, aircraft types, **seat assignments, and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this Contract of Carriage.**

  B. …

  C. Delay … or Cancellation - In the event … a passenger's flight is canceled … Frontier will provide transportation on its own flights at no additional charge to the passenger's original destination …"

- Section "**13 – Carry-On Baggage**

  A. …
  If a personal item exceeds allowed dimensions, the personal item may be considered to be a carry-on item, and the applicable fee will apply."

- Section "**16 — Claim Limits and Procedures**

  …
  B. Time Limit to Make Claims and Procedures

  1. With respect to domestic flights …, any claim based on damage, delay, or loss of baggage must be reported to Frontier within 4 hours of the arrival of the flight on which the loss or damage is claimed to have occurred. Claims for pilferage may be made up to 24 hours after flight arrival. …"

In this case, Plaintiff Molina alleges that Frontier cancelled her original flight without adequate notice, and that she was rebooked for a later flight, but Frontier only provided a voucher worth aprox. $100. On the day of the rebooked flight, Plaintiff Molina was unable to board because she did not pay the fee for baggage exceeding the airline's size limits, as plaintiff claimed her baggage did not exceed the size limit. See, Complaint ¶¶ 18-22. Plaintiff Molina's claims she lost the money she paid for her airline ticket because she did not make a claim within the specified time-limit, and had to purchase new tickets and Frontier failed to provide the accessible front seat previously purchased. Id., ¶¶ 24-25. The new flight was delayed for more than 3 hours. Id., ¶ 26.

Plaintiffs Molina's allegations related to delays in travel schedules and seat assignments must be dismissed, because **flight schedules and seat assignment form no part of the Contract of Carriage**, and thus, Plaintiffs cannot claim a breach of the Contract of Carriage. Likewise, the allegations in Plaintiffs' Complaint show that after the cancellation of Plaintiff Molina's original flight, she was rebooked for another flight and given a voucher. Therefore, as per Plaintiffs' own admissions, Frontier complied with its duty to schedule another flight to provide Plaintiff Molina with transportation. It is during the re-scheduled flight that Plaintiff Molina's was told that her personal item or baggage exceeded the allowed dimensions. As per Frontier's Contract of Carriage, if the personal item exceeds the size limits, the applicable fee must be paid, and if it is not paid, it follows that the passenger may not be able to board the plane. That action is expressly permitted under the Contract of Carriage and does not constitute a breach.

Likewise, the breach of contract of carriage claims in connection with Plaintiffs Saxton-AIGS must be dismissed. In the Complaint, Plaintiffs Saxton-AIGS alleged that Frontier employees told them that one of their personal items exceeded the size limits, and that a fee needed to be paid. See, Complaint ¶ 31. Plaintiffs went to the Frontier counter adjacent to the gate, but the Frontier employees working allegedly told them, in a rude manner, that they did not speak Spanish, and eventually they were denied boarding. Id., ¶¶ 33 and 35. Plaintiffs Saxton-AIGS were offered a new flight at an additional cost, without Frontier covering meals, lodging or transportation for the additional day they had to spend in Florida, waiting for their new flight. Id., ¶¶ 37 and 38. They also claim that Frontier's communication system for resolving passenger disputes is effectively non-existent, as it is allegedly designed in such a way that passengers are deprived of meaningful access to customer service or timely responses to their complaints. Id., ¶ 39.

The Contract of Carriage expressly authorizes Frontier to determine compliance with baggage limitations and assess applicable fees. Disagreement with Frontier's determination does not plausibly allege breach of a contractual obligation. Where a passenger does not pay the required fee under the Contract, Frontier retains the authority to deny boarding for non-compliance with baggage requirements. Plaintiffs have not identified any contractual provision prohibiting such enforcement. Likewise, Frontier's Contract of Carriage disclaims liability for schedule changes and delays and does not force Frontier to provide lodging or meals except as expressly provided. Plaintiffs identify no contractual language requiring such compensation to Plaintiffs Saxton-AIGS.

Finally, Plaintiffs' allegation that Frontier's customer communication system is "effectively non-existent" (Complaint ¶ 39) does not identify a contractual obligation and cannot sustain a breach-of-contract claim.

**H. Dismissal of the Class Allegations**

Plaintiffs seek certification of a nationwide class consisting of:

> "All passengers of Frontier Airlines who, within the past ten years, experienced discrimination, denial of boarding, or unreasonable treatment arising from Frontier's failure to accommodate disabilities, unfair fees, or hostile conduct by staff." See, Complaint ¶ 42.

The proposed class should be dismissed for three independent reasons.

**1. The Class Allegations Fail as a Matter of Law Because Plaintiffs' Substantive Claims Fail**

As demonstrated above, Plaintiffs' constitutional claims, Section 1983 claims, Section 1981 claims, ADA claims, ACAA damages claims, and DOT regulatory claims fail as a matter of law. The remaining contract-based allegations likewise fail to identify a specific breached provision of the Contract of Carriage.

Where no viable underlying claim survives, class allegations necessarily fail. Courts routinely dismiss class claims at the pleading stage when the substantive causes of action are legally deficient. See, Brown v. United Airlines, Inc., supra.

Accordingly, because Plaintiffs fail to state any cognizable claim, the proposed class allegations must be dismissed.

**2. The Proposed Class Is Facially Overbroad and Unascertainable**

Even assuming arguendo that any claim survived dismissal, the proposed class is facially overbroad and unmanageable. As per the Complaint, the class definition spans ten years and includes: multiple airports, different flights, different alleged incidents, different baggage determinations, different alleged discriminatory conduct, different contractual provisions, and different operational contexts.

Such a sweeping class cannot satisfy Rule 23(a)'s requirements of commonality and typicality. Determining whether any passenger experienced "discrimination" or "unreasonable treatment" would require individualized, fact-intensive inquiries into each interaction, baggage measurement, boarding decision, and alleged motive; and courts may dismiss facially defective class allegations at the pleading stage when it is apparent that Rule 23 cannot be satisfied. See, Belfiore v. Procter & Gamble Co., 311 F.R.D. 29 (E.D.N.Y. 2015) (collecting cases).

The proposed class is facially overbroad, unascertainable, and lacks commonality and typicality. Courts may dismiss defective class allegations at the pleading stage. Moreover, Frontier's Contract of Carriage specifically states "[a]ny case brought pursuant to this Contract of Carriage, … or Frontier's Customer Service Plan may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." See, Section 21 (I) of Frontier's Contract of Carriage.

### 3. Plaintiffs Are Contractually Barred from Bringing Class Claims

Frontier's Contract of Carriage expressly provides:

> "Any case brought pursuant to this Contract of Carriage… may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding."

See, Section 21(I).

Courts routinely enforce class action waivers contained in transportation contracts where, as here, the contract governs the passenger's rights and remedies. See, AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011).

In this case, Plaintiffs' breach-of-contract claim arise directly from the Contract of Carriage and, therefore, subject to its class action waiver provision. Accordingly, Plaintiffs are contractually barred from pursuing class relief.

## IV. CONCLUSION:

For the foregoing reasons, Frontier respectfully requests that this Honorable Court grant its Motion to Dismiss in its entirety. Plaintiffs' constitutional and § 1983 claims fail because Frontier is not a state actor; their § 1981 claims fail for lack of plausible allegations of intentional race discrimination and but-for causation; their claims under the Americans with Disabilities Act fail because that statute does not apply to air carriers; their Air Carrier Access Act and DOT regulatory claims fail because no private right of action exists; and their state-law claims are expressly preempted by the Airline Deregulation Act. Likewise, Plaintiffs failed to identify any specific contractual provision breached or to claim facts sufficient to state a plausible claim for relief for breach of the Contract of Carriage.

**WHEREFORE**, Frontier respectfully move this Honorable Court to dismiss the above captioned action under Fed.R.Civ.P. 12(b)(6).

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 4th day of March, 2026.

I CERTIFY that today I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

**ROMÁN SANTOS LLC**
Counsel for Defendant Frontier

PO Box 9295
San Juan, Puerto Rico 00908
Tel. (787) 300-2811
Fax (787) 300-2814

*/s/ Tomás A. Román-Santos*
Tomás A. Román-Santos
USDC-PR No. 219806
E-mail: tomas@roman-santos.com

*s/Melissa Hernández-Carrasquillo*
Melissa Hernández-Carrasquillo
USDC-PR No. 230511
E-Mail: mhernandez@mhclawoffice.com