**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

ARLIN SOCORRO MOLINA-NEGRON, et al.,

**Plaintiffs,**

**v.**

FRONTIER AIRLINES INC.,

**Defendant.**

**CIVIL NO. 25-1592 (RAM)**

**OPINION AND ORDER**

Pending before the Court is Defendant Frontier Airlines Inc.'s ("Frontier" or "Defendant")'s *Motion to Dismiss the Complaint for Failure to State a Claim upon which Relief can be Granted* (the "*Motion to Dismiss*") (Docket No. 14). For the reasons outlined below, the Court hereby **GRANTS** Defendant's *Motion to Dismiss*.

**I. PROCEDURAL BACKGROUND**

On November 5, 2025, Plaintiffs, namely Puerto Rico residents and paying customers of Frontier, filed a *Class Action Complaint* against Defendant, alleging that Frontier arbitrarily cancelled flights, denied boarding, failed to provide reasonable accommodation for disabled passengers, and engaged in hostile and discriminatory conduct against passengers. (Docket No. 1). Plaintiffs argue that Frontier's conduct constitutes a breach of contract; discrimination under the Air Carrier Access Act

("ACAA"), 49 U.S.C § 41705; violations of U.S. Department of Transportation ("DOT") Regulations; violations of the American with Disabilities Act ("ADA"), 42 U.S.C § 12101 et seq.; violations of the Civil Rights Act, 42 U.S.C. § 1981; violations of due process and equal protection rights under the Fifth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 ("Section 1983"); and negligence under Puerto Rico's General Tort Statute, P.R. Laws Ann. Tit. 31 § 10801. Id.

Defendant filed the pending *Motion to Dismiss* on March 4, 2026. (Docket No. 14). Therein, Frontier contends that: (1) there is no private right of action under the ACAA or DOT Regulations; (2) the ADA does not apply to air carriers in the context of Air Transportation; (3) Section 1983 does not apply to private parties like Frontier; (4) Plaintiffs fail to state a claim for discrimination under 42 U.S.C. § 1981; (5) Plaintiffs' Puerto Rico law claims are preempted by the Airline Deregulation Act; (6) Plaintiffs fail to state a claim for breach of contract of carriage; and (7) the class allegations fail as a matter of law because Plaintiffs' substantive claims fail. Id.

The Court deemed the Motion to Dismiss unopposed on March 26, 2026. (Docket No. 17). On April 15, 2026, Plaintiffs filed their *Opposition to Defendant's Motion to Dismiss and Request for Leave to file out of Time for Good Cause Shown* ("*Opposition*"). (Docket No. 18). Plaintiffs contend that good cause exists because "the

Motion to Dismiss was, at one point, held in abeyance by Order of this Court, thereby creating a reasonable expectation that further proceedings would precede dispositive adjudication." Id. at 1. However, the Court's order holding the *Motion to Dismiss* in abeyance also imposed a March 19, 2026 deadline for Plaintiffs to respond. (Docket No. 15). Plaintiffs did not comply with this deadline and did not allege good cause for their failure to do so. Accordingly, the Court will not consider the arguments raised in Plaintiffs' *Opposition*.

## II. APPLICABLE LAW

### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id.

**B. The Existence of a Private or Implied Cause of Action**

"[P]rivate rights of action to enforce federal law must be created by Congress." Gonzalez-Hugues v. Puerto Rico, 2013 WL 149621, at *2 (D.P.R. 2013); *see also* Atl. Richfield Co. v. Christian, 140 S. Ct. 1335, 1350 (2020) (quotation omitted) ("[A] suit arises under the law that creates the cause of action."); Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979). However, if the federal law in question "does not grant a plaintiff a private right of action, the court must consider whether there exists an *implied* federal right of action." Lopez-Ramos v. Cemex de Puerto Rico, Inc., 2020 WL 5224190, *4 (D.P.R. 2020). The Supreme Court has specified that when deciding whether to recognize an implied cause of action, the determinative question is one of statutory intent. *See* Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.". Alexander v. Sandoval, 532 U.S. 275, 286, (2001). Therefore, "[i]f the statute itself does not 'displa[y] an intent' to create 'a private remedy' then 'a cause of action does not exist **and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute**.'" Ziglar v. Abbasi, 137 S. Ct. at 1855 (quoting Sandoval, 532 U.S. at 286-287) (emphasis added). This is consistent with Supreme Court precedent

which for decades has held that the court's task "is limited solely to determining whether Congress intended to create the private right of action asserted[.]" Touche Ross, 442 U.S. at 568.

## III. DISCUSSION

### A. Plaintiffs' Discrimination Claims

#### a. The ACAA does not Create Private Rights of Action

Congress enacted the ACAA in 1986 "to address and prohibit airline discrimination based on disabilities, and directed the [Federal Aviation Administration ("FAA")] to issue regulations 'to ensure nondiscriminatory treatment of qualified handicapped individuals consistent with safe carriage of all passengers on air carriers.'" Elassaad v. Indep. Air, Inc., 613 F.3d 119, 131 (3d Cir. 2010) (quoting Pub. L. No. 99-435 § 3, 100 Stat. 1080 (1986)). In the case at bar, Plaintiffs allege that Frontier violated the ACAA by "fail]ing] to provide reasonable accommodation to Plaintiff and others with disabilities." (Docket No. 1 ¶ 60).

Notably, the First Circuit "has yet to decide whether the ACAA's enforcement scheme includes a private right of action" and "[t]he clear text of the statute does not contain such a right." Rodriguez-Gonzalez v. Am. Airlines, Inc., No. CV 23-1306 (SCC), 2024 WL 1307122, at *2 (D.P.R. Mar. 27, 2024). Thus, the question before the Court is whether the ACAA creates an implied cause of action.

Applying the principles outlined by the Supreme Court in Sandoval, the Second, Fifth, Ninth, Tenth, and Eleventh circuits have all concluded that the **ACAA does not create an implied private right of action.** Id. (collecting cases). Specifically, these Circuit Courts concluded that the text and structure of the ACAA evince that Congress intended to protect passengers from disability discrimination via an administrative procedure within the DOT rather than a private cause of action raised in district court. *See* Lopez v. Jet Blue Airways, 662 F.3d 593, 597-98 (2d Cir. 2011) ("The statute does not expressly provide a right to sue the air carrier, and that right should not be implied because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers."); Stokes v. Sw. Airlines, 887 F.3d 199, 202-3 (5th Cir. 2018) (describing how the ACAA's comprehensive administrative scheme whereby individuals file complaints with the DOT indicates that Congress did not intend to allow the additional remedy of a private right of action); Segalman v. Sw. Airlines Co., 895 F.3d 1219, 1227 (9th Cir. 2018) ("In light of the multiple methods expressly provided for enforcing the ACAA's prohibition against disability discrimination, we must infer that Congress intended to preclude a private cause of action."); Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1269 (10th Cir. 2004) (noting that the express provision of one method of enforcing a substantive rule suggests that Congress intended to

preclude others and that in the ACAA, Congress established an administrative enforcement scheme authorizing individuals who allege violations to file complaints with the Secretary of Transportation and to appeal the Secretary of Transportation's orders to the courts of appeal); Love v. Delta Air Lines, 310 F.3d 1347, 1357 (11th Cir. 2002) ("The explicit provision of these elaborate [administrative] enforcement mechanisms strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly.").

Applying Supreme Court precedent and persuaded by the reasoning outlined in Lopez, Stokes, Segalman, Boswell, and Love, the Court concludes that the ACAA does not establish a private right of action. Accordingly, Plaintiffs claims under the ACAA are hereby **DISMISSED WITH PREJUDICE.**

**b. Plaintiffs cannot Raise a Claim of Disability Discrimination against Aircraft Carriers under the ADA**

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C.A. § 12184(a). The ADA defines "specified public transportation" as "transportation by bus, rail, or any other conveyance (**other than**

**by aircraft**) that provides the general public with general or special service (including charter service) on a regular and continuing basis.". 42 U.S.C. § 12181(10) (emphasis added). Therefore, "[a]ir carriers are not liable under this section for disability discrimination in the provision of services related to air transportation." Lopez, 662 F.3d at 598.

The ADA also prohibits "any person who owns, leases ..., or operates a place of public accommodation" from discriminating on the basis of disability in "any place of public accommodation." 42 U.S.C. § 12182(a). A "terminal, depot, or other station used for specified public transportation" is governed by the ADA under this section if they are "'used for'" modes of transportation that fall within the statutory definition of 'specified public transportation," namely, "transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public with general or special services (including charter service) on a regular and continuing basis[.]'" Lopez 662 F.3d at 599 (cleaned up) (42 U.S.C § 12181(7)(G), (10)). In Lopez, the Second Circuit determined that "public transportation terminals, depots, or stations used primarily to facilitate air transportation are not 'public accommodation[s]' for purposes of Title III of the ADA." Lopez v. Jet Blue Airways, 662 F.3d 593, 599 (2d Cir. 2011).

The Court, agrees with the Second Circuit and also finds that per the plain text of the ADA, it does not apply to aircraft carriers in this case. Once again, the ACAA's administrative procedure is the proper mechanism for disability discrimination claims from passengers against airlines. Plaintiffs' claims under the ADA are hereby **DISMISSED WITH PREJUDICE.**

**c. Section 1983 does not apply to Frontier**

Plaintiffs raise allegations pursuant to the Fifth and Fourth Amendments to the United States Constitution under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Two allegations are required to state a cause of action under Section 1983: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right **acted under color of state or territorial law**." Gomez v. Toledo, 446 U.S. 635, 640 (1980) (emphasis added). "Significantly, § 1983 does not apply to 'merely private conduct, no matter how discriminatory or wrongful.'" Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014) (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).

Private parties can be viewed as state actors only in "rare circumstances" if one of the three following tests is met:

> The first test is the state compulsion test. Under this test, a private party is fairly characterized as a state actor when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State. The second test—the nexus/joint action test—deems a private party a state actor where an examination of the totality of the circumstances reveals that the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]. Finally, under the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been traditionally the exclusive prerogative of the State.

Klunder v. Brown Univ., 778 F.3d 24, 30-31 (1st Cir. 2015) (internal citations and quotations omitted) (alterations in original).

Plaintiffs have failed to allege that any of these three tests are met by Frontier. Frontier is a private entity, and Plaintiffs allege exclusively private conduct. Therefore, Plaintiffs claims under Section 1983 are hereby **DISMISSED WITH PREJUDICE.**

**d. Plaintiffs Failed to State a Claim under Section 1981**

42 U.S.C. 1981 ("Section 1981") "prohibits both public and private racial discrimination in certain specified activities (including the making and enforcement of contracts)." Garrett v.

Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002). The statute provides that "[a]ll persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens[.]" 42 U.S.C. 1981(a). To state a claim under § 1981, a plaintiff must show that: "(1) [they are] a member of a racial minority; (2) the defendant discriminated against [them] on the basis of her race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts." Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013).

Plaintiffs have not met this burden. Throughout their *Complaint*, Plaintiffs assert that "Defendants' behavior is discriminatory based on race, gender, nationality, religion, disability" but they fail to provide detailed allegations of race discrimination as required to raise a claim under Section 1981. *See* (Docket No. 1 ¶¶ 62 and 75). As previously held by the First Circuit, "mere conclusory allegations of discrimination unsupported by any facts are insufficient for notice pleading purposes." Toledo v. Sanchez, 454 F.3d 24, 34 (1st Cir. 2006); *see also* Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (noting that a plaintiff may not prevail on a motion to dismiss "simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory

animus”). In light of the above, Plaintiffs’ claim under Section 1981 is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**B. Plaintiffs’ Claims under DOT Regulations**

As is the case with the ACAA, the related DOT regulations also fail to create private rights of action.[1] The Supreme Court has explained that:

> When a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. **But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.** Agencies may play the sorcerer's apprentice but not the sorcerer himself.

Sandoval, 532 U.S. at 291 (emphasis added). *See, e.g.*, Buck v. Am. Airlines, Inc., 476 F.3d 29, 34 (1st Cir. 2007) (holding that “the consumer protection provisions of the [Airline Deregulation Act] do not permit the imputation of a private right of action against an airline”).

Because the statute does not provide a private cause of action, it follows that the related DOT regulations likewise cannot do so. Therefore, Plaintiffs’ claims for violations of DOT regulations are hereby **DISMISSED WITH PREJUDICE.**

[1] The Court further notes that Plaintiffs fail to identify which specific DOT regulations were allegedly violated. *See* (Docket No. 1 ¶¶ 70-80).

**C. Plaintiffs' Claims for Breach of Contract of Carriage**

Plaintiffs contend Frontier breached its contract of carriage by "canceling and delaying flights without adequate notice, denying boarding without cause, and failing to provide purchased or promised services" as well as "failing to safely transport Plaintiff with reasonable care" and by failing to provide assistance to all passengers without discrimination. (Docket No. 1 ¶¶ 52, 56-57). Although Plaintiffs allege that Defendants have a duty to provide the aforementioned services pursuant to their Contract of Carriage, Plaintiffs do not mention any specific provisions of said contract.

For a contract claim to survive a Fed. R. 12(b)(6) motion, the plaintiff "must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007); *see also* Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007) (quotations omitted) ("In a contract action, this irreducible minimum requires the pleader to explain what obligations were imposed on each of the parties by the alleged contract."). In Doyle v. Hasbro, Inc., the First Circuit affirmed the dismissal of a breach of contract claim where:

> The amended complaint fails to state the nature of the alleged contract with any specificity. There is no presentation of the terms of a contract, its duration, or even when it was formed. Nor does the Amended Complaint explain what obligations were imposed on each of the parties by the alleged contract. It does not plead that plaintiffs were ready to perform under the contract or that the defendants' breach prevented them from performing, and it does not identify the damages attributable to the breach. Conclusory statements that "Hasbro and its executives failed to meet their contractual requirement," amended complaint ¶ 34, are insufficient to satisfy the pleading requirements.

Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).

Plaintiffs' *Complaint* similarly fails to provide more than conclusory allegations regarding the terms of the contract, the obligations imposed therein, Defendants' specific breach, and the damages allegedly caused by the same. In relevant part, Plaintiffs take issue with the fact that Frontier: (1) cancelled a flight and only provided a $100 voucher; (2) denied boarding to individuals that did not pay an additional fee for baggage that did not meet the airline's size requirements; (3) refused to honor prior payment for failure to make a claim within a specified amount of hours; (4) did not provide a previously purchased accessible front seat after rebooking a flight; and (5) delayed a flight by three hours. Id. ¶¶ 18, 19, 21, 24, 25, 26, 31. However, Plaintiffs subsequently provide only the broad, general allegations that: (a) "Defendants have obligations, which are detailed in the contract of carriage.

Defendants' obligations include: Transporting Plaintiffs to the destination safely and in a reasonable manner. Providing basic services promised in the ticket like seating, boarding, and assistance;" and (b) "Defendants violate specific contractual promises as to the assistance to all passengers and non-discrimination." (Docket No. 1 ¶¶ 55, 57). The *Complaint* is silent as to the specific contours of these obligations and how Frontier failed to adequately comply with the terms of the Contract of Carriage. Therefore, Plaintiffs failed to adequately state a claim of breach of contract. Accordingly, Plaintiffs' breach of contract claims are hereby **DISMISSED WITHOUT PREJUDICE.**

**D. Plaintiffs' Puerto Rico Law Damages Claims**

Plaintiffs allege that Frontier negligently or intentionally inflicted emotional distress in violation of Puerto Rico's General Tort Statute, P.R. Laws. Ann. Tit. 31 § 10801, by harassing, humiliating, denying assistance, and providing abusive treatment that caused emotional distress, panic attacks and other damages. (Docket No. 1 ¶¶ 65-67, 69). Defendant counters that these claims are preempted by the Airline Deregulation Act. (Docket No. 14 at 15-17).

The Airline Deregulation Act provides that states and territories "may not enact or enforce a law, regulation, or other provision having the force and effect of law **related to a** price, route, or **service of an air carrier** that may provide air

transportation under this subpart." 49 U.S.C. § 41713 (a)-(b) (emphasis added). The Supreme Court has explained that "[t]he ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words **thus express a broad pre-emptive purpose**." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992). The First Circuit has held that preemption analysis under the Airline Deregulation Act "breaks down into two sub-questions: whether the claim is based on a state 'law, regulation, or other provision having the force and effect of law,' (the 'mechanism' question), and whether the claim is sufficiently 'related to a price, route, or service of an air carrier' (the 'linkage' question). Bower v. Egyptair Airlines Co., 731 F.3d 85, 93 (1st Cir. 2013) (quoting Brown v. United Airlines, Inc., 720 F.3d 60, 63 (1st Cir. 2013)).

Puerto Rico's General Tort Act is covered by the language "other provision having the force and effect of law." *See* id. (noting that state common law tort and contract claims satisfy the mechanism question). The issue then becomes whether Plaintiffs' Puerto Rico law claims are sufficiently related to a service provided by Frontier. In Bower, the First Circuit adopted a "broader view" of what constitutes a "service" under the Airline Deregulation Act, concluding that it extends beyond prices,

schedules, and destinations to include the handling of luggage, in-flight food and beverage provisions, ticketing, check-in, and boarding procedures. Id. at 94-95.

Plaintiffs' claims are necessarily related to services, as they arise from baggage policies, ticketing, flight delays, customer service interactions, and boarding decisions. District Courts have consistently held that similar claims to those presented by Plaintiffs are preempted by the Airline Deregulations Act. *See, e.g.*, Chukwu v. Bd. of Directors Brit. Airways, 889 F. Supp. 12, 14 (D. Mass. 1995), aff'd sub nom. Azubuko v. Bd. of Directors, Brit. Airways, 101 F.3d 106 (1st Cir. 1996) (finding that the gist of Plaintiff's intentional infliction of serious emotional distress claim was "that British Airways wrongfully prevented his brother from boarding a flight, a process uniquely within the service provided and controlled by air carriers. His claims, therefore, are clearly related to an airline 'service' within the meaning of § 1305(a)(1)§ 1305(a)(1)"); Cannava v. USAir, Inc., No. CIV. A. 91-30003-F, 1993 WL 565341, at *6 (D. Mass. Jan. 7, 1993) ("His claims are based on the core allegation that defendant's agents acted rudely, insultingly, and discourteously toward him in processing his flight ticket. Given the broad interpretation of the phrase 'relating to ... services,' the defendant's motion to dismiss must be allowed."). In light of the above, the Court is of the view that Plaintiffs' claims under

Puerto Rico's General Tort statute are preempted by the Airline Deregulation Act.

However, even if that were not the case, the Court also finds that Plaintiffs have failed to adequately allege the existence of a legal duty, one of the three elements of a negligence claim under Puerto Rico law.[2] *See* Velazquez-Velez v. Molina-Rodriguez, 327 F. Supp. 3d 373, 387 (D.P.R. 2018) (citing Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007)) ("To prevail on a Puerto Rico negligence claim, plaintiffs must establish three elements: (1) an injury, (2) a breach of duty, and (3) proximate causation of the injury."). Instead, Plaintiffs merely provided a conclusory allegation that Frontier "owed passengers a duty of care to operate safely, treat passengers with respect, and avoid foreseeable harm." (Docket No. 1 ¶ 64). Although respect and courtesy should be afforded to all, its absence does not give rise to a damages claim.

Accordingly, Plaintiffs' claims for negligent and intentional infliction of emotional distress under Puerto Rico's General Tort Statute are hereby **DISMISSED WITH PREJUDICE.**

[2] Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code was enacted in November 2020. PR Laws Ann. tit. 31 § 10801. However, Articles 1802 and 1536 "are extremely similar and thus can be used interchangeably." Orellano-Laureano v. Instituto Médico del Norte, Inc., 2023 WL 4532418, at *6 n.5 (D.P.R. July 13, 2023). "Therefore, all caselaw referencing or analyzed under the now defunct Article 1802 remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020." Dumanian v. FirstBank Puerto Rico, No. CV 22-1543 (CVR), 2024 WL 197429, at *3, n.4 (D.P.R. Jan. 17, 2024).

**E. The Complaint fails to state a claim against the United States of America and the VA Caribbean Health Care System**

Oddly, Plaintiffs requested summons as to Attorney General of the United States, the United States Attorney for the District of Puerto Rico, and the VA Caribbean Healthcare System (the "VA"). (Docket Nos. 7, 7-1; 7-2; 7-3). After reviewing the *Complaint*, the Court found that no allegations were pled against the United States nor the VA. *See* (Docket No. 1). Nevertheless, the Court instructed Plaintiff to "file an informative motion as to whether they contend the United States of America and VA Caribbean Health Care System are proper parties in this case." (Docket No. 20). In response, Plaintiffs confirmed that neither the United States of America nor the VA are named Defendants, that the *Complaint* "expressly identifies Frontier Airlines, Inc. as the named Defendant, together with unidentified defendants and unidentified insurance agencies"; and that "the reference to 'Unknown Defendants and Unknown Insurance Agencies' is expressly limited to persons who may be liable for the conduct alleged in the Complaint." (Docket No. 21 ¶¶ 2-4). Accordingly, the Court will spill no further ink regarding whether Plaintiffs failed to state a claim against the United States of America or the VA.

**F. Class Allegations**

At the motion to dismiss stage, courts "must dismiss the complaint in its entirety if the named plaintiff has no cause of

action in [their] own right. A named plaintiff who cannot establish her own case may not seek relief on behalf of other class members." Simonet v. SmithKline Beecham Corp., 506 F. Supp. 2d 77, 81 (D.P.R. 2007) (citing O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Britt v. McKenney, 529 F.2d 44, 45 (1st Cir. 1976)). Because none of Plaintiffs' claims survive the *Motion to Dismiss*, the entirety of the class action must also be dismissed.

## IV. CONCLUSION

In light of the above, Defendant's *Motion to Dismiss* at Docket No. 14 is **GRANTED.** Accordingly, Plaintiffs' claims under the Air Carrier Access Act; the Americans with Disabilities Act, 42 U.S.C. 1983; Department of Transportation regulations; and Puerto Rico's General Tort Statute are hereby **DISMISSED WITH PREJUDICE.** Plaintiff's claims under 42 U.S.C. § 1981 and for breach of contract are hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of September 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge